UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
............................................................................x

MIGUELINA CALDERON,

      Plaintiff,

    -against-

THE CITY OF NEW YORK, JAMES SOUTH,
ALEXANDER SOSA, AND JOHN/JANE DOE 1-10,

      Defendants.
............................................................................x

**THIRD AMENDED
COMPLAINT**

JURY TRIAL REQUESTED

14-cv-01082 (PAE)

  Plaintiff, MIGUELINA CALDERON, by her attorneys, ROTHSTEIN LAW PLLC,

complaining of the defendants, respectfully shows to the Court and alleges as follows:

## PRELIMINARY STATEMENT

  1.  Plaintiff, MIGUELINA CALDERON, brings this action against defendants

seeking, *inter alia*, redress for violations of her rights under the Fourth and Fourteenth

Amendments of the United States Constitution, under the Civil Rights Act, 42 U.S.C. § 1983,

and under the laws of the State of New York. Plaintiff seeks compensatory and punitive

damages, along with costs and attorneys' fees. Plaintiff's rights were violated when New York

City Police Officers/Detectives forcibly entered her apartment, threatened her with weapons,

handcuffed, detained her, and searched her apartment, based on a no-knock warrant seeking to

search a male (German Perez) who did not live in plaintiff's apartment.   By reason of

defendants' actions, including their failure to follow proper procedures, their unreasonable

conduct, incompetency, negligence and recklessness in obtaining the warrant, their misleading

the Court, and their intentional tortuous acts in executing it, plaintiff was deprived of her

constitutional and common law rights.

1

2.      Plaintiff seeks an award of compensatory and punitive damages along with attorneys' fees.

## JURISDICTION

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§1331, 1343(3) and (4), 42 U.S.C. §§ 1983, 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. The Court has supplemental jurisdiction over plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper within the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b)(1) and (2), in that all the defendants reside within the boundaries of the Southern District of New York and a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of New York.

## NOTICE OF CLAIM

5.      A notice of claim setting forth the time and place where the injuries sustained by the plaintiff were sustained, was duly filed with the office of the Comptroller of New York City or the Law Department in accordance with Section 50(e) of the General Municipal Law on November 21, 2013, within 90 days after the causes of action herein accrued and before the commencement of this action; that the provisions of Section 50(h) of the General Municipal Law have been complied with; that more than 30 days have elapsed since the presentation of the aforesaid claim and demand and defendant has refused or neglected to make any adjustment thereof; and this action is commenced within one year and 90 days after the causes of action herein accrued.

## THE PARTIES

6.      Plaintiff, MIGUELINA CALDERON, a female, is a resident of County of Bronx, State of New York, and resides at 275 East 201st Street, Apt. 5F, Bronx, New York 10458 (hereinafter "apartment").

7.      Defendant, THE CITY OF NEW YORK (hereinafter "CITY"), is a municipal corporation duly authorized and existing under and by virtue of the laws of the State of New York;

8.      Defendant, CITY, has established and maintains the New York City Police Department (hereinafter "NYPD") which is an agency of the defendant, CITY.

9.      Upon information and belief, defendant, JAMES SOUTH (hereinafter SOUTH"), is a resident of the State of New York and is being sued in his individual and official capacity.

10.      Upon information and belief, at all times relevant, defendant, SOUTH, was and is employed by defendant, CITY, and/or the NYPD.

11.      Upon information and belief, at all times relevant, defendant, SOUTH, was and is employed by defendant, CITY, and/or the NYPD, as Police Officer or Detective.

12.      At all times relevant, defendant, SOUTH, was acting within the scope of his employment with defendant, CITY and/or NYPD.

13.      Upon information and belief, defendant, ALEXANDER SOSA (hereinafter "SOSA"), is a resident of the State of New York and is being sued in his individual and official capacity.

14.      Upon information and belief, at all times relevant, defendant, SOSA, was and is employed by defendant, CITY, and/or the NYPD.

15.     Upon information and belief, at all times relevant, defendant, SOSA, was and is employed by defendant, CITY, and/or the NYPD, as Police Officer or Detective.

16.     At all times relevant, defendant, SOSA, was acting within the scope of his employment with defendant, CITY and/or NYPD.

17.     Upon information and belief, defendants, JOHN/JANE DOE 1-10, are Police Officers and Detectives whose identities are currently unknown who are members of the NYPD who took place in the incident described herein while working in the scope of their employment with defendant, CITY, and/or NYPD, and are being sued in their individual and official capacities.

18.     At all times relevant, defendants, SOUTH, SOSA, and JOHN/JANE DOE 1-10, were acting under the color of State Law.

19.     Notwithstanding the unconstitutional and unlawful conduct, the actions of the individually named defendants were taken in the course of their duties and were incidental to their otherwise lawful functions as an agent, servant and employee of defendants, CITY, and/or NYPD.

## **THE FACTS**

20.     In or about June 2012, plaintiff signed a lease with her landlord for the apartment.

21.     Plaintiff moved into the apartment in or about July 2012 with her husband and her son (then 16 years of age) and no one else. They have been the only tenants since that time and continue to reside in the apartment.

22.     The apartment has only one door used for entering and exiting the apartment.

23.     In July 2012, the Con Edison bill for the apartment was put in plaintiff's name.

4

24.     At the time plaintiff moved in to the apartment, it had a lower lock but no top lock. Upon information and belief, the super installed a new lower lock at the time plaintiff moved in.

25.     In July 2012, plaintiff installed a top lock and only plaintiff, her husband, and her son had the key. Thus as of July 2012, and continuing to the present, the door had 2 separate locks.

26.     The top lock key that plaintiff had installed cannot be duplicated unless you have a special card. There is only one card and neither plaintiff nor anyone in her family has loaned or given the card to anyone.

27.     The building did not have a copy of the top lock key or the card.

28.     At no time did plaintiff lose either key or loan them to anyone else.

29.     Plaintiff's husband and child have advised her that neither of them lost their keys or loaned them to anyone else.

30.     Plaintiff does not know German Perez and she never loaned or gave him keys to her apartment.

31.     Plaintiff's husband and son have advised her that neither of them knows German Perez and neither of them loaned or gave apartment keys to German Perez.

32.     Plaintiff never saw anyone named German Perez inside her apartment during the entire time that she has resided there and she never permitted anyone named German Perez entry into the apartment during the entire time that she has resided there.

33.     Plaintiff's husband and son have advised her that neither of them saw anyone named German Perez inside the apartment during the entire time that they have resided there and

they never permitted anyone named German Perez entry into the apartment during the entire time that they have resided there.

34.    Because of security concerns at a prior apartment, it was the custom and practice of plaintiff, her husband, and her son, to always lock the top lock when leaving the apartment thereby requiring the use of a top-lock key to re-enter the apartment.

35.    Plaintiff always locked the top lock when she left the apartment.

36.    Plaintiff's husband and son have advised her that they always locked the top lock when they left the apartment.

37.    Thus, German Perez would have needed both the lower and top lock keys to enter the apartment, as alleged by SOUTH and/or SOSA; something he did not have.

38.    In August 2012, ADT installed an alarm system that covered, among other places, the entrance/exit door to the apartment as well as the fire escape window.

39.    Said alarm was always turned on when no one was in the apartment.

40.    The door was never left unlocked and the apartment was never left unoccupied without the alarm being turned on.

41.    In the event the alarm is activated, ADT would notify plaintiff by telephone before ADT contacted the authorities.

42.    At no time in the period set forth in SOUTH's search warrant application did ADT advise plaintiff, or her husband or child, that the alarm had been tripped.

43.    On August 22, 2013, defendant, SOUTH, signed an Affidavit In Support of Search Warrant under the penalties of Penal Law § 210.45, entitled Making a punishable false written statement (hereinafter "the Affidavit").

44.     The Affidavit sought search warrants for the apartment as well as apartment 5K in the same building.

45.     In the Affidavit, defendant, SOUTH, stated that during a controlled drug buy, which occurred within 2 weeks of the August 22, 2013, search warrant application, he saw the target of the warrant, German Perez (hereinafter "Perez") exit the apartment, retrieve keys from his pocket and use them to enter apartment 5K and then exit that apartment, enter an elevator before returning in the elevator to the fifth floor a few minutes later, and re-entering apartment 5K.  Defendant, SOUTH, further stated that his Confidential Informant (hereinafter "CI") told him that Perez exited the building, entered a Ford Explorer and sold CI cocaine.

46.     In the Affidavit, defendant SOUTH, stated that in a second controlled buy with the CI, which occurred within 5 days prior to the August 22, 2013, search warrant application, defendant SOSA saw Perez exit an elevator on the fifth floor and use keys to enter apartment 5K, leave that apartment and enter the elevator. SOUTH stated that he saw Perez enter a Ford Explorer, saw CI enter and exit the car and then saw Perez park the car and re-enter the building, take the elevator to the fifth floor, take keys from his pocket and use them to enter the apartment. CI told SOUTH that he bought cocaine from Perez in the car.

47.     Based on this information, the Court issued a search warrant for the apartment and also 5K.

48.     As defendants have not served any discovery regarding the alleged controlled buys (such as buy reports, property vouchers or lab reports), plaintiff has no way to know if they actually occurred or if SOUTH and/or SOSA made them up in support of the search warrant application. Similarly, plaintiff has no way to know at this juncture if the driver's license

proffered by SOUTH (issued 11 months before the search of the apartment) was obtained during a car stop or was obtained from the Department of Motor Vehicles.

49.     The information that SOUTH provided to the Court about Perez entering and exiting the apartment was false and physically impossible, which he knew, because Perez did not have keys to the apartment and certainly did not have the top lock key, and therefore could not have used keys to get in the apartment, which was never left unlocked, and the alarm was never tripped.

50.     The information that SOUTH attributed to SOSA was either made up by SOSA or made up by SOUTH because Perez did not have keys to the apartment and certainly did not have the top lock key, and therefore could not have used keys to get in the apartment, which was never left unlocked, and the alarm was never tripped.

51.     Although defense counsel has not specified the exact dates that SOUTH wrote in his affidavit that he and SOSA saw Perez exit/enter the apartment, it was not possible because Perez did not have the keys (and certainly did not have the top lock key), and therefore could not have used keys to get in the apartment, which was never left unlocked, and ADT did not report that the apartment's alarm had ever been activated despite the fact that it was plaintiff's and her family's custom and practice to always lock the top lock and engage the alarm.

52.     On August 27, 2013, plaintiff resided in her apartment.

53.     On August 27, 2013, plaintiff was lawfully inside her apartment when, sometime between 3 and 4 pm, she heard banging on her door as she was exiting the shower.  Plaintiff initially locked herself in her room and then grabbed a towel and looked through the peephole to see people in dark clothing breaking down her door.

54.     Believing that these people were members of the Police Department, plaintiff opened her door and the police entered waiving a piece of paper.  A female Police Officer or Detective entered and asked plaintiff who else lived in the apartment.

55.     Plaintiff then asked to see their badges and the female showed her badge and then handcuffed plaintiff who was still wearing only a towel, with her back showing.

56.     Defendants intended to confine plaintiff, who was conscious of the confinement and did not consent to the confinement.

57.     The female then removed the handcuffs to allow the plaintiff to get some clothes. The female then took plaintiff to the bathroom to get dressed in her presence then handcuffed her again and took her to the living room.

58.     Once in the living room, the police showed plaintiff a photocopy of German Perez' driver's license and plaintiff said that he didn't live in the apartment.

59.     The police then asked plaintiff who else she knew in the building and plaintiff responded that she knew someone on the first floor.

60.     A Police Officer/Detective then told plaintiff that the male in the photo – who they were looking for – still paid her Consolidated Edison bill and plaintiff responded that this was not possible as she had been living in the apartment for approximately 13 months and the Consolidated Edison bill was in her name.

61.     A Police Officer/Detective then alleged that the police had video of this male coming in and out of plaintiff's apartment and plaintiff again said this was not possible because it was her apartment.

62.     Plaintiff informed the police that the building's Superintendent had previously told her that a lady who used to live in the apartment now lived in apartment 5K.

9

63. The police then went to that apartment and arrested Perez and seized drugs.

64. The police refused to give plaintiff a copy of any purported warrant and forced plaintiff to pose for photographs in front of different locations of her apartment and to sign a Prisoner Property Receipt form.

65. At no time did defendants find any contraband in plaintiff's apartment, nor did they have any reasonable basis to believe that there was contraband in the apartment or that the person the male person that they were looking for resided in the apartment or was present at the time of their entry.

66. Plaintiff was eventually released from custody.

67. Plaintiff was falsely arrested, detained against her will, and her apartment searched.

68. Defendants knew or should have known that the affidavit submitted by defendants supporting a warrant for plaintiff's apartment contained false information and/or had not been sufficiently investigated to determine who resided in the apartment.

69. Defendants knew or should have known that there was a complete lack of probable cause that drugs, or other evidence of illicit drug business, or the male they were purportedly seeking would be found at plaintiffs' apartment.

70. Defendants, their agents, servants or employees, knew or should have known that plaintiff's apartment was wrongfully identified as the residence/location of the male that they were allegedly looking for.

71. Defendants failed to verify, confirm or observe that plaintiff's apartment was the location of any illegal activity or the residence/location of the male they were purportedly

seeking, and wrongly relied on patently wrong and unsubstantiated information, thereby causing plaintiff's apartment to be inserted in the warrant and/or forcibly entered.

72.     Had defendants conducted a personal observation or otherwise taken appropriate to verify plaintiff's apartment was the site of illegal activity or the location of the male that they were purportedly seeking they would have determined that plaintiff's apartment was not the place intended to be inserted in any warrant.

73.     Upon information and belief, defendants failed to interview the building superintendent or the mailman to determine if German Perez lived in the apartment at the time of the search warrant application.

74.     Upon information and belief, defendants failed to check with either Consolidated Edison or any telephone companies to confirm if German Perez had any accounts in his name for the apartment at the time of the search warrant application or if there had been any changes in the account holder.

75.     At the time that plaintiff's apartment was entered and searched, defendants were aware and had reason to know that no knock search warrants, such as the one executed at plaintiff's apartment, could contain material errors and that there were procedures in place that would prevent such errors from.

76.     During their entry, defendants damaged plaintiff's door, including removing it off its hinges, which they acknowledged on a Prisoner Property Receipt form. This damage caused plaintiff to be confined to her apartment for 3 additional days, until her super could repair the damage because the NYPD was unable to fix it.

77.     Defendants lacked justification to detain, arrest, imprison plaintiff and search her apartment.

## FIRST CAUSE OF ACTION
### (42 U.S.C. § 1983)

78.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth more fully herein.

79.     Defendants did wrongfully arrest, detain and imprison plaintiff without probable cause, without a warrant naming her, based on a warrant obtained with false information, and in bad faith, and searched her apartment with basis to do so.

80.     In commencing and continuing said wrongful arrest, detainment and imprisonment, defendants caused plaintiff to be wrongfully detained in violation of the Penal Laws of the State of New York and her constitutional rights.

81.     At the time of her unlawful arrest, detention and imprisonment, plaintiff had not committed or attempted to commit any illegal act or crime and had not given defendants probable cause to believe that she had committed any illegal acts or crimes.

82.     At the time of plaintiff's unlawful arrest, detention and imprisonment defendants knew or should have known, through the exercise of proper procedure and reasonable investigation, that the aforementioned arrest/detention/imprisonment was false and without probable cause.

83.     Defendants acted in bad faith and without justification in committing the aforesaid detention and unlawful imprisonment of plaintiff.

84.     As a result of the foregoing, plaintiff was caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, and damage to her reputation and standing within the community.

85. As a result, plaintiff is entitled to compensatory damages, in an amount of not less than $1,000,000.00, as well as punitive damages against defendant, SOUTH, and the JOHN/JANE DOE defendants.

## SECOND CAUSE OF ACTION
<u>(Monell)</u>

86. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth more fully herein.

87. The actions of defendant, CITY, its agents, servants and/or employees heretofore described constitute unlawful arrest, detention, imprisonment, and search, and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution and the Constitution of the State of New York.

88. The supervisors and policy making officers of defendant, CITY, and its Police Department, as a matter of policy, have failed to take steps to terminate the above detailed practices and have failed to discipline or otherwise properly supervise the individuals engaged in such practices.

89. Defendant, CITY, has failed to properly and effectively train its employees with regard to proper constitutional and statutory limits on the exercise of their authority, and such failure continues to this day.

90. At all times material to this Complaint, defendant, CITY, acting through the NYPD, had in effect *de facto* policies, practices and customs that were a direct and proximate cause of the unconstitutional conduct of defendants, SOUTH, and the JOHN/JANE DOE defendants.

91.     These policies, practices and customs include, *inter alia*:  the failure to properly screen, supervise, discipline, transfer, counsel, or otherwise control police officers/detectives engaged in the investigation and use of search warrants and the failure to properly investigate the target premises.

92.     The existence of aforesaid unconstitutional customs and the policy of failure to screen, discipline, supervise, counsel, transfer, control and correct unconstitutional patterns or conditions, is evidenced, *inter alia*, by the following list of cases (not necessarily complete), all involving SOUTH's violation of civil rights:

a.      In the case of *Gittens v. South, et-al*, 02-cv-07777, wherein DET. JAMES SOUTH and other police officers were alleged to have used excessive force and falsely arrested the Plaintiff without legal basis. The case settled for $70,000.

b.      In the case of *Smith v. City of New York, et-al*, 04-cv-03286, DET. JAMES SOUTH and other police officers were alleged to have wrongfully arrested an individual for engaging in a drug sale. The drug sale was dismissed.

c.      In the case of *Castro v. City of New York, et-al*, 07-cv-11602, DET. JAMES SOUTH and other police officers were alleged to have broken the arm of the Plaintiff and charging him with assaulting police officers. The criminal charges were dismissed against the Plaintiff and the lawsuit was settled for $26,600.

d.      In the case of *Butler v. City of New York, et-al*, 05-cv-02661, DET. JAMES SOUTH and other police officers were alleged to have accused Plaintiff of making a drug sale. The criminal charges were dismissed. The civil lawsuit settled for $20,000.

e.      In the case of *Mendez v. City of New York, et-al*, 12-cv-0344, 57-year old JOSE MENDEZ, a building superintendent, was at his dwelling when JAMES SOUTH

telephoned him, telling MENDEZ that his mother had suffered a heart attack and MENDEZ had to come to his mother's 562 West 175th Street apartment. MENDEZ sent his wife instead, and SOUTH telephoned MENDEZ again to advise MENDEZ that his wife would be arrested unless MENDEZ came to his mother's apartment. Upon arriving at his mother's apartment, MENDEZ was arrested by SOUTH and charged with possession of drugs found in the mother's apartment. unable to post bail, MENDEZ spent 6 days in jail until released on May 10, 2011. All charges were dismissed on October 17, 2011. The case settled October 4, 2012 for $50,000.00.

f.      In *Aponte v. City of New York, et-al*, 09-cv-4300, it was alleged that on February 15, 2008, DET. MADELINE MELENDEZ, DET. CALLOWAY, and other police officers, broke down the plaintiff's door and entered her apartment at gunpoint, handcuff her in front of her children while she is clad only in her underwear, and later arrest her. All charges were dismissed on October 17, 2008. The case settled 1/8/2012 for $22,500.00.

g.      In the case of *Ortiz-Vinales v. City of New York, et-al*, 12-cv-05021, it is alleged that DET. MADELINE MELENDEZ, and other police officers, entered the apartment in which the Plaintiff was a guest of the tenants. Mr. Ortiz Vinales was ordered at gunpoint to lie on the floor and was repeatedly struck by the police. Despite having found no contraband, police handcuff Mr. Ortiz Vinales and charged him, based upon a felony complaint signed by Det. Melendez, with Criminal Possession of a Controlled Substance in the Third Degree. Mr. Ortiz-Vinales spent several days in jail prior to his release. All charges against him were dismissed on October 20, 2011. The civil lawsuit was filed on June 27, 2012 and later settled.

h.      In the case of *Holley v. City of New York*, et-al,05-cv-00248, December 1, 2004, approximately 4:00 p.m., West 119th Street, New York, New York, plaintiff was walking on the sidewalk after handing out pamphlets regarding an upcoming clothing donation drive for

charity when team of NBMN investigators, including DET. KEITH CUMMINGS, arrest him and tell him, "Someone saw you sell drugs." Mr. Holley was handcuffed and charged with Criminal Sale of a Controlled Substance in the Third Degree. Unable to post bail, Mr. Holley remained incarcerated until "180.80 day," December 7, 2004, when he appeared before the Grand Jury, which dismissed the case. Mr. Holley filed a lawsuit in January 11, 2005. The NYC Corporation Counsel never filed an Answer refuting any of the lawsuit's allegations; instead, the lawsuit was settled two months later on March 14, 2005 for $27,500.00.

    i.    In *Hunter v. City of New York, et al.,* 13-cv-1367 (CM) DET. SOUTH falsely alleged that he saw the plaintiff sell drugs causing him to spend 7 days in jail. Plaintiff was acquitted after trial. The civil case is still pending.

    j.    *Perez v. City of New York,* 14-CV-00759 (CM) (August 29, 2012, at six o'clock in the morning of, SOUTH and other NYPD members forcibly entered the apartment/rooms in which the 2 plaintiffs rented; The apartment had four bedrooms, each of which had a lock on the door and each of which was rented out by a different person. Each plaintiff's room had its own refrigerator and a lock on the door.  Each was asleep when SOUTH and the others entered but were handcuffed and brought out into the hallway before being arrested and charged with felony drug possession. On November 14, 2012, Mr. Perez's and Mr. Montesano's cases were dismissed. The City subsequently settled with the plaintiffs);

    93.    The existence of aforesaid unconstitutional customs and the policy of failure to screen, discipline, supervise, counsel, transfer, control and correct unconstitutional patterns or conditions, is evidenced, *inter alia*, by the following list of cases (not necessarily complete), all involving SOSA's violation of civil rights:

a.      In the case of *Benn v. City of New York, et-al*, 12-cv-02041, wherein SOSA and other police officers were alleged to have entered the plaintiff's apartment, without showing a search warrant, looking for her son who lives elsewhere in the building, detained her for 1 ½, searched her apartment, and forced her to call her son to falsely tell him she was sick in order to get him to come to her apartment so they could arrest him and then falsely arrested the plaintiff for allegedly violating PL 220.03 and 220.50, a case that the District Attorney declined to prosecute. The City offered Judgment and the case settled for $12,501 plus legal fees.

b.      In the case of *De La Rosa v. City of New York, et al*, 12-cv-04009, entered the plaintiffs' apartment with a search warrant looking for Iran De La Rosa, who was not there and whose room was locked with a deadbolt that no one else had the key to. The police handcuffed 4 members of the household and SOSA called Iran De La Rosa and threatened to arrest his family members if he did not surrender.  Although Iran De La Rosa did surrender, SOSA and the other police arrested them anyway but the charges were dismissed due to lack of evidence.  The City paid each of the 4 members of the household $15,000 to settle their case.

c.      In the case of *Habersham v. City of New York, et al.*, 12-cv-09143, SOSA, and other members of the NYPD, entered the plaintiffs' apartment without a warrant, arrested them, drove them around in a van, stole their property, and then processed them before the District Attorney declined to prosecute them. The City settled the case for an unknown amount of money.

d.      In the case of *Estevez v. City of New York, et al.*, entered the plaintiff's apartment without showing a search warrant, after executing a warrant at an apartment one floor above, and arrested plaintiff and his brother for allegedly drug charges that were ultimately

dismissed on motion of the District Attorney. The City offered Judgment and the case settled for $10,000 plus legal fees.

      e.     In the case of *Bennett v. City of New York, et al.*, 13-05558, defendant SOSA, and other members of the NYPD, falsely arrested the plaintiff, who was standing on a street corner, for allegedly selling marijuana, charges that were later dismissed for facial insufficiency. The City paid $29,000 to settle the case.

      f.     In *Fernandez v. City of New York, et al.*, 14-cv-08073, defendant SOSA, and other members of the NYPD, falsely arrested two plaintiffs, who the District Attorney declined to prosecute, and used excessive force on a third. The case is still pending.

    94.    The existence of aforesaid unconstitutional customs and the policy of failure to screen, discipline, supervise, counsel, transfer, control and correct unconstitutional patterns or conditions, is evidenced, *inter alia*, by the following list of cases, all involving the execution of warrants in locations where there was no criminal conduct going on, filed in the Eastern District of New York, found without benefit of discovery through a cursory Google search, in which defendant, CITY, paid monetary settlements:

      a.     *Rogers v. City of New York, et al.*, 03-cv-04510;

      b.     *Mack v. City of New York, et al.*, 03-cv-04506;

      c.     *Moreno & Nelson v. City of New York, et al.*, 12-cv-00226;

      d.     *Cobb v. City of New York, et al.*, 12-cv-00121;

      e.     *Bassey v. City of New York, et al.*, 12-cv-00123;

      f.     *Myrie v. City of New York, et al.*, 12-cv-00087;

      g.     *Clark v. City of New York, et al.*, 12-cv-00243.

95.     The policymakers of the NYPD and defendant, CITYY, knew or should have known that police officers/detectives, including but not limited to defendant, SOUTH, and the other JOHN/JANE DOE defendants, were violating people's Constitutional rights and that these police officers/detectives were taking actions that were shocking the conscience or otherwise violating the substantive due process rights of the people of The City of New York.

96.     As a result of the foregoing, plaintiff was caused to suffer personal injuries, violation of civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses and damage to hie reputation and standing within the community.

97.     As a result of the acts herein, plaintiff has been damaged in an amount of not less than $1,000,000.00.


**THIRD CAUSE OF ACTION**
(State Law False Arrest/Detention/Imprisonment)

98.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth more fully herein.

99.     During the course of defendants' forcible entry and search of plaintiff's apartment, defendants intentionally and maliciously forcibly restrained and detained plaintiff and prevented her from moving of her own free will.

100.    Defendants thereby falsely arrested, detained, and imprisoned plaintiff without her consent.

101.    Pursuant to 28 U.S.C. § 1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate this claim.

102.     As a result, plaintiff is entitled to compensatory damages, in an amount of not less than $1,000,000.00, as well as punitive damages against defendant, SOUTH, and the JOHN/JANE DOE defendants.

## FOURTH CAUSE OF ACTION
(Attorneys' Fees - 42 U.S.C. §1988)

103.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the preceding paragraphs with the same force and effect as if set forth more fully herein.

104.     That the actions of defendants, heretofore described, deprived plaintiff of rights, privileges, and immunities as guaranteed under the Fourth and Fourteenth Amendment of the United States Constitution and the Civil Rights Acts, 42 U.S.C. §1983.

105.     The complained of conduct was either the result of an official policy or unofficial custom, including, but not limited to policies and customs concerning the hiring, training, supervision, retention and discipline of defendants, their agents, servants and/or employees.

106.     In the event that plaintiff is successful in the prosecution of the aforesaid claim(s), plaintiff shall be a prevailing party within the meaning of 42 U.S.C. §1988 and be entitled to the recovery of said attorneys' fees from the defendants.

## CLAIM FOR RELIEF

WHEREFORE, plaintiff requests the following relief:

a.     Compensatory damages;

b.     Punitive damages;

c.     An award of costs and expenses of this action together with reasonable attorneys' fees; and

d.      Such other and further relief as appears reasonable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: New York, New York
          May 20, 2015

                                        *Eric E. Rothstein*                
                                        Eric E. Rothstein
                                        Attorney for Plaintiff
                                        Rothstein Law PLLC
                                        11 Park Place Suite 1100
                                        New York, New York 10007
                                        (212) 577-9797

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MIGUELINA CALDERON,

                         Plaintiff,

          -against-

THE CITY OF NEW YORK, JAMES SOUTH, AND JOHN/JANE DOE 1-10,

                         Defendants.

## THIRD AMENDED COMPLAINT

**ROTHSTEIN LAW PLLC**
Attorneys for **Plaintiff**
11 Park Place, Suite 1100
New York, New York 10007
212-577-9797

CERTIFICATION BY ATTORNEY:

The undersigned, an attorney duly admitted to practice in the Courts of the State of New York, shows:

I certify that, to the best of my knowledge, information and belief formed after an inquiry reasonable under the circumstance, the presentation of the paper(s) listed above or contention(s) herein are not frivolous as defined in §130-1.1(c).

_____
                Eric E. Rothstein